UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH NEWMAN et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 4:24-cv-00575-SRC |
| UBER TECHNOLOGIES, INC. et al., | ) |
| Defendants. | ) |

### Memorandum and Order

Plaintiffs seek to hold Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber") responsible for Elijah Newman's death. Previously, the Court rejected Plaintiffs' invitation because Plaintiffs' complaint failed to state a claim. Now, Plaintiffs, seeking another bite at the apple, ask the Court for leave to file an amended complaint. Because a second bite would nourish Plaintiffs' case no more than the first one did, the Court denies Plaintiffs' request.

**I.   Background**

Plaintiffs filed their original complaint against Uber and Torian Wilson in state court in April 2024, and Uber removed the case to this Court the next week. Docs. 1–2. About three weeks after that, Uber asked the Court to dismiss the claims against it for failure to state a claim. Docs. 17–18. After the parties briefed the motion, *see* docs. 18, 25, 32, the Court ordered supplemental briefing and held oral argument, docs. 38, 41.

In November 2024, the Court granted Uber's motion and dismissed, without prejudice, Plaintiffs' claims against Uber because Plaintiffs failed to adequately allege that Uber owed Newman a duty to protect him from Wilson's deadly attack. Docs. 44–45. That left Plaintiffs' claims against Wilson still standing. But because Plaintiffs had not pursued the claims against

Wilson for several months, the Court issued an order requiring Plaintiffs to show cause why the Court shouldn't dismiss those claims for failure to prosecute. *See* doc. 46. Plaintiffs failed to show sufficient cause. *See* docs. 47, 48. So the Court dismissed the claims against Wilson without prejudice. Docs. 48–49.

At no point between April and November 2024 did Plaintiffs seek leave to amend their complaint: not in their response to Uber's Motion to Dismiss (in which Uber explicitly argued that the Court should not give Plaintiffs leave to amend their complaint, *see* doc. 18 at 10, 22 (The Court cites to page numbers as assigned by CM/ECF.)); doc. 25; not in their supplemental brief, doc. 40; not at oral argument, doc. 43; and not even in their response to the Court's November 2024 show-cause order, which the Court issued six days *after* the Court dismissed Plaintiffs' claims against Uber, *see* doc. 46; doc. 47 at 1–2 (stating that "Plaintiffs are currently working to amend their pleadings," but failing to ask the Court for leave to amend). Nevertheless, a month after the Court dismissed Plaintiffs' claim against Uber, and over a week after the Court dismissed all other "remaining claims" in the case, Plaintiffs filed an amended complaint anyway. Docs. 49, 50. The Court struck the amended complaint because Plaintiffs no longer had a right to amend their complaint under Federal Rule of Civil Procedure 15(a)(1) and because Plaintiffs had failed to obtain Defendants' consent or the Court's leave before filing the amended complaint. Doc. 53.

A week later, Plaintiffs asked the Court for leave to amend their complaint. Docs. 54–55. Plaintiffs seek to assert claims against Uber only—they no longer wish to go after Wilson. *Id.* Uber responded to the motion, doc. 56, and Plaintiffs replied, doc. 57, rendering the Motion for Leave to Amend, doc. 54, ripe for this Court's review.

2

## II.     Standard

The parties hotly contest the standard of review.  Uber contends that the Court previously dismissed the case, so Plaintiffs must satisfy "the stringent standards" for relief from a final judgment before seeking leave to amend their complaint.  *See, e.g.*, doc. 56 at 9.  Plaintiffs counter that, because the Court dismissed their claims without prejudice, the Court didn't enter a final judgment, so a more liberal standard applies.  *See, e.g.*, doc. 57 at ¶¶ 15–21.

The Court need not resolve this issue.  Because the Court finds that Plaintiffs' proposed amended complaint could not survive a motion to dismiss, *see* section III, *infra*, and because even a court considering a post-judgment motion for leave to amend "may not ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits," *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009), the Court assumes, without deciding, that the liberal amendment rules of Rule 15(a)(2) fully apply.  Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave," which the Court "should freely give . . . when justice so requires."  But "[a] district court may appropriately deny leave to amend 'where there are compelling reasons "such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."'"  *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (quoting *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003)).  Futility bears the most relevance here.

Even under Rule 15(a)(2), "a party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim." *Plymouth Cnty. v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014) (citing *Wisdom v. First Midwest*

3

*Bank*, 167 F.3d 402, 409 (8th Cir. 1999)). "A district court thus may deny a motion to amend a complaint when such an amendment would be futile." *Id.* (citing *Wisdom*, 167 F.3d at 409). "When the court denies leave [to amend] on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6). *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1015 (8th Cir. 2012) (alteration in original) (quoting *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012)).

### III.   Discussion

At the motion-to-dismiss stage, Plaintiffs argued that Uber owed a duty to Newman based on two theories: foreseeable risk and voluntary undertaking. *See* doc. 25 at 7–15. When the Court ordered supplemental briefing at that stage, it asked Plaintiffs to develop the legal basis for *those two* theories. Doc. 38 at 2–3. Plaintiffs addressed those theories. *See* doc. 40. But, deep in their supplemental brief, they also raised a new theory. Citing a multi-factor test, they argued that Uber owed Newman a duty based on public-policy grounds. *See* doc. 40 at 9–10 (first citing *Strickland v. Taco Bell Corp.*, 849 S.W.2d 127, 132 (Mo. Ct. App. 1993); and then citing *D.J. by & through Jackson v. First Student, Inc.*, No. ED 111487, 2024 WL 3152509 (Mo. Ct. App. June 25, 2024), *ordered transferred to the Supreme Court of Missouri* (Oct. 1, 2024)). In their proposed amended complaint—and in their argument for why amendment wouldn't be futile— Plaintiffs go all in on this public-policy theory. *See* doc. 57 at ¶¶ 30–33. Plaintiffs don't put up a fight against Defendants' arguments that Plaintiffs' proposed amended complaint fails to allege a duty under Plaintiffs' original two theories. *See, e.g.*, doc. 57 at ¶ 30 (conceding that the proposed amended complaint "focus[es] on a single theory of liability"); *see also id.* at ¶¶ 31–32

4

(arguing that the new facts "support a finding of liability" under the multi-factor public-policy test).

After the parties fully briefed Plaintiffs' Motion for Leave to Amend, the Missouri Court of Appeals handed down a decision in *Ameer v. Lyft, Inc.*, 711 S.W.3d 534 (Mo. Ct. App. 2025). Considering factual similarities between the facts in *Ameer* and the facts that Plaintiffs allege here, the Court ordered the parties to file supplemental briefs discussing the impact of *Ameer* on Plaintiffs' Motion for Leave to Amend. Doc. 59. The Court has considered the arguments that the parties raise in their supplemental briefs, docs. 60–61. The Court will first discuss Plaintiffs' public-policy theory and then turn to the impact of *Ameer*.

### A. The public-policy theory

Plaintiffs argue that their proposed amended complaint adequately alleges a duty based on the following factors:

- a. the social consensus that the interest is worthy of protection,
- b. the foreseeability of the injury and the degree of certainty that the protected person suffered injury,
- c. the likelihood of the injury,
- d. the moral blame society attaches to the conduct,
- e. the prevention of future harm,
- f. consideration of cost and the ability to spread the risk of loss, and
- g. the consequences of placing that burden on the defendant.

Doc. 57 at ¶ 32 (first citing *Gunnett v. Girardier Building & Realty Co.*, 70 S.W.3d 632, 639 (Mo. Ct. App. 1993); then citing *Strickland*, 849 S.W.2d at 132; and then citing *Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc./Special Prods., Inc.*, 700 S.W.2d 426, 431–32 (Mo. 1985)). Plaintiffs ask the Court to weigh these factors in light of the allegations and arguments in the proposed amended complaint. *See* doc. 55–2 at ¶¶ 176–225 (going through the factors and concluding that Uber owed Newman a duty).

5

Plaintiffs' argument misunderstands both the role of this Court and the role of the public-policy factors in determining duty.  The Court, in its prior Memorandum and Order, explained the proper framework for evaluating whether a duty exists under Missouri law:

> To determine whether a duty exists under novel circumstances, the Court looks to "relevant state precedent, analogous decisions, considered dicta, and any other reliable data to determine how the Missouri Supreme Court would construe the law." [*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Raczkowski*, 764 F.3d 800, 803 (8th Cir. 2014)] (quoting *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009)).
>
> Before extending a legal duty to a novel set of facts, the Court must exercise caution.  In *National Union*, an insurance company sued a bank for negligence after the bank failed to inquire into whether an employee had the authority to open an account on the employer's behalf.  *Id.* at 801.  The district court dismissed the complaint for failure to state a claim because the bank owed no duty to the employer.  *Id.*  And the Eighth Circuit affirmed.  *Id.*  For the proposition that the Supreme Court of Missouri would recognize a duty, the insurance company relied on a Supreme Court of Missouri decision that was "materially different" from the case at hand and "limited in scope" compared to the insurance company's proposed duty.  *Id.* at 804.  To extend that precedent to the case before it, the court held, would be to establish a rule with "no practical limitation."  *Id.* at 805.
>
> Here, Plaintiffs contend that Uber owed not only its own contractors but also Lyft drivers a duty "to protect them from known, dangerous passengers." Doc. 2 at ¶ 153.  In other words, Plaintiffs ask the Court to impose a duty on a business for a crime committed on the platform of a competitor's business.  But Plaintiffs have failed to point to any case in which a Missouri court imposed a duty on one business to protect the contractors or employees of a competitor's business.  The Court has found no such case through its own research, either.  Thus, the Court evaluates Plaintiff's claim of duty with caution, using "relevant state precedent, analogous decisions, considered dicta," and "other reliable data" as its lodestar.  *See Nat'l Union*, 764 F.3d at 803.

Doc. 44 at 7–8; *see also Ford v. GACS, Inc.*, 265 F.3d 670, 682 (8th Cir. 2001) ("Where no duty is indicated by Missouri statute, case law, or otherwise, a fundamental prerequisite to establishing negligence is absent" (citing *Horstmyer v. Black & Decker, (U.S.), Inc.*, 151 F.3d 765, 773 (8th Cir. 1998))); *Trimble v. Asarco, Inc.*, 232 F.3d 946, 963 (8th Cir. 2000) (quoting *Bircher v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996), for the proposition that "[w]hen [a court

6

is] faced with opposing plausible interpretations of state law, [it] generally choose[s] the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability"), *abrogated on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005).

Right out of the gate, even if the Missouri courts applied the public-policy factors in the same way that Plaintiffs seek to apply them here, that wouldn't move the needle much. As *National Union* suggests, not all sources of law provide equally "reliable data" about whether the Supreme Court of Missouri would impose a duty. *See National Union*, 764 F.3d at 803 (quoting *Ashley Cnty.*, 552 F.3d at 665). In its Memorandum and Order on Uber's Motion to Dismiss, doc. 44, the Court didn't stop at the *language* that the Missouri courts have used when discussing duty (which amounts to, at best, "considered dicta"). It instead did precisely what the Eighth Circuit did in *National Union*—it analogized to relevant cases, abstracted principles from those cases, and applied those principles to Plaintiffs' complaint. *Compare Nat'l Union*, 764 F.3d at 804–06 (summarizing Missouri caselaw, analogizing to the case at hand, finding that the proposed duty lacked a "limiting principle," finding a limiting principle from other cases, and concluding that the Supreme Court of Missouri would not have extended the duty that the plaintiff relied on) *with* doc. 44 at 8–22 (same). And Plaintiffs' public-policy theory doesn't alter that analysis or change the fact that: (1) no Missouri court has ever imposed a duty on a corporation for an intentional criminal act that occurred on a competitor's platform and (2) Plaintiffs' proposed duty lacks a limiting principle.

And even more importantly, Missouri common law doesn't invite *any* court—much less a federal district court—to find a duty based on the public-policy factors that Plaintiffs point to or to impose a duty that the court thinks would be good public policy to impose. *See, e.g.*, *A.R.R. v.*

7

*Tau Kappa Epsilon Fraternity, Inc.*, 649 S.W.3d 1, 13 n.10 (Mo. Ct. App. 2022) (holding that the court was "not at liberty" to find a duty based on public-policy factors because liability rules already existed); *M.B. v. Live Nation Worldwide, Inc.*, 661 S.W.3d 342, 353 (Mo. Ct. App. 2022) ("Missouri jurisprudence has developed a clear framework to recognize two exceptions to the general rule that a business has no duty to protect a plaintiff from a third party's criminal acts" and declining to find liability beyond that framework); *Junior Coll. Dist. of St. Louis v. City of St. Louis*, 149 S.W.3d 442, 449–50 (Mo. 2004) (declining to find a duty, without weighing the public-policy factors, because *Hoover's Dairy* and other cases were factually distinguishable). The three cases that Plaintiffs rely on provide no exception.

In *Gunnett*, although the court noted that it was "mindful of the policy considerations as to when a duty will be imposed," the court did *not* weigh the public-policy factors individually. 70 S.W.3d at 643. And the case *undermines* rather than supports Plaintiffs' duty theory because it came out the wrong way. *See id.* (finding that no duty existed because the defendant directed no "affirmative act" toward the plaintiff); *cf.* doc. 44 at 15–16 (rejecting Plaintiffs' argument that Uber owed a duty based on its affirmative acts).

The *Hoover's Dairy* court didn't weigh the public-policy factors one by one, either. *See generally* 700 S.W.2d 426. Instead, the court found a duty based on the same undertaking theory that this Court analyzed (and rejected) in its prior Memorandum and Order. *Compare Hoover's Dairy*, 700 S.W.2d at 432–33 (finding that the defendant owed a duty of reasonable care because "it undertook to render services" for the plaintiff) *with* doc. 44 at 16 (finding that Uber owed no duty under a voluntary-undertaking theory "because the duty that Plaintiffs assert[ed] l[ay] outside the scope of Uber's undertaking").

8

And *Strickland* supports Plaintiffs' theory no more than the other cases do. Like the *Hoover's Dairy* court, the *Strickland* court mentioned the public-policy factors in passing but focused its analysis on the voluntary-undertaking doctrine. *See Strickland*, 849 S.W.2d at 132–33. Neither *Strickland* nor any other case that this Court has found stands for the proposition that a court can find a duty based solely on a balancing of public-policy factors, divorced from the facts of the cases that cite those factors or the liability rules that the Missouri courts have developed and relied on. And *Ameer* amounts to no exception. Again, although *Ameer* mentioned the role of "several public policy considerations" in determining a duty, 711 S.W.3d at 549 (quoting *Scales v. Whitaker*, 615 S.W.3d 425, 436 (Mo. Ct. App. 2020)), the court did not weigh the public-policy factors when it found that a duty existed. It instead, as discussed further below, relied on rules and precedents that the Missouri courts had already adopted. *Id.* at 549–52. Thus, Plaintiffs' public-policy theory does not support a duty.

**B.     The impact of *Ameer***

In *Ameer*, Rochelle Ameer sued Lyft, a rideshare platform, after a rider "fraudulently and anonymously requested through Lyft's mobile ridesharing application" a ride from Ameer's son and killed him. 711 S.W.3d at 539–40. Ameer asserted, among other claims, a negligence claim based on a wrongful-death theory. *Id.* at 548. The state trial court dismissed Ameer's claim for failure to state a claim. *Id.* at 539. But the Missouri Court of Appeals reversed. *Id.*

The complaint in *Ameer* alleged that two minors, who were "supposed to be ineligible to order rides through the Lyft [a]pp, met and conspired together to use the [a]pp to carjack a Lyft driver." *Id.* at 540. The minors requested a ride through the Lyft app, and Ameer's son accepted the request. *Id.* After Ameer's son arrived, the minors announced a robbery, pulled guns on Ameer's son, attempted to force him out of the car, and eventually shot and killed him. *Id.*

9

Ameer alleged that the minors had previously, on multiple occasions, carried out the same carjacking scheme that they carried out on Ameer's son. *Id.* Ameer also alleged that "Lyft knew or should have known that multiple rideshare drivers had been assaulted, attacked, and carjacked as a result of the same fraudulent scheme." *Id.*

In addressing the negligence claims, the Missouri Court of Appeals first acknowledged the general rule that "[a] duty to protect against the criminal acts of third parties is generally not recognized because such activities are rarely foreseeable." *Id.* at 549 (quoting *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. 2018)). But the court recognized that, where "a victim is injured at a location other than the defendant's premises," two exceptions to the general rule exist. *Id.* at 550. First, a duty exists where "the defendant 'should realize through special facts within his knowledge . . . that an act or omission exposes someone to an unreasonable risk of harm through the conduct of another.'" *Id.* at 549–50 (alteration in original) (quoting *Advance Rental Ctrs., Inc. v. Brown*, 729 S.W.2d 644, 645–46 (Mo. Ct. App. 1987)). Second, a duty exists where "the defendant 'has brought the victim into contact or association with a person or persons whom he knows or should know to be particularly liable to commit criminal acts, and under circumstances [that] afford a peculiar opportunity or temptation for such misconduct.'" *Id.* at 550 (quoting *Brown*, 729 S.W.2d at 645–46).

The Missouri Court of Appeals held that the first exception applied to the facts of *Ameer*. The court explained that Ameer had alleged that "Lyft failed to utilize readily available and known measures" that would have protected Ameer's son. *Id.* Those alleged omissions included (1) Lyft's failure to train Ameer's son "to identify particularly dangerous situations or people," (2) Lyft's failure to offer Ameer's son "security measures in his vehicle such as a surveillance camera or a physical barrier between the front and backseats," (3) Lyft's failure "to implement

10

basic anti-fraud and identity-verification measures in its [a]pp that Lyft had implemented in other states." *Id.* at 550–51.  Assuming the truth of Ameer's allegations, the court reasoned that her petition established that "Lyft should have realized through special facts within its knowledge that its omissions exposed" Ameer's son "to an unreasonable risk of harm through the conduct of third parties, like [the] perpetrators, who were able to use the Lyft [a]pp to fraudulently and anonymously request a ride." *Id.* at 551 (citation omitted).  Thus, the court held that the first exception applied.

Relying on the same allegations, the court held that the second exception applied, too.  *Id.* at 551–52.  That's because the petition alleged that the Lyft app "brought" Ameer's son "into contact with his perpetrators." *Id.* at 551.  And the petition alleged that "Lyft knew or should have known" that the minors were "particularly liable to commit criminal acts" while Lyft could have employed "measures that would have arguably protected" Ameer's son "from harm." *Id.* at 551–52.

The Court acknowledges that some factual similarities exist between the allegations in Ameer's complaint and the allegations in Plaintiffs' proposed amended complaint.  First, like in *Ameer*, where Ameer alleged that the minors had carried out a similar carjacking scheme "multiple times" before Ameer's son's murder, *id.* at 540, Plaintiffs here allege that Wilson "committed at least two carjackings" of rideshare drivers before he murdered Newman, doc. 55-2 at ¶ 4.  And second, Ameer alleged that the minors used Lyft's app "to fraudulently and anonymously request a ride by utilizing a false name, a false email address, and an anonymous form of payment," *Ameer*, 711 S.W.3d at 550, while Plaintiffs here allege that, when Wilson committed his carjackings, he too used an alias, *see* doc. 55-2 at ¶¶ 67, 72, 76–77.

11

But at the end of the day, the distinctions between *Ameer* and this case carry far more weight on the issue of whether a federal court sitting in diversity should create a heretofore nonexistent duty to the contractors or employees of a competitor.  Most notably, in *Ameer*, the fatal ride took place on the defendant's platform.  *See Ameer*, 711 S.W.3d at 548 (noting that Ameer based her negligence claim "on Lyft's alleged failure to exercise reasonable care to prevent" Ameer's son "from being assaulted, killed, or otherwise harmed by *Lyft* [a]pp users" (emphasis added)).  But here, Newman's murder took place not on Uber's platform, but on Lyft's.  Doc. 55-2 at ¶ 85 (noting that Lyft paired Newman with Wilson).  That makes the second exception that *Ameer* applied inapplicable here, because Uber didn't bring Newman "into contact with" Wilson.  *Contra Ameer*, 711 S.W.3d at 551.

The difference-in-platform distinction makes a meaningful difference as to the first exception, too, because the *Ameer* duty would lack a limiting principle if that duty applied to this case, and the policy implications of extending liability to the contractors of a competitor are on a different plane than imposing liability on one's own contractor or employee.  The proposed scope of the duties between the two cases illustrates this.  In *Ameer*, Ameer tried to hold Lyft liable based on Lyft's (1) failure to train Ameer's son "to identify particularly dangerous situations or people," (2) failure to offer Ameer's son "security measures in his vehicle," and (3) failure to require its passengers using "an anonymous form of payment" to provide identification before requesting a ride.  *Id.*  That is, Ameer sought to hold Lyft responsible for its failures to police its *own* rideshare platform.  *See id.*  Surely, that duty contains a limiting principle to ensure that the duty doesn't swallow the general no-duty-to-protect-against-third-party-criminal-acts rule:  your duty ends where your platform ends, or so it would seem.  In any event, it will be

12

up to the Missouri courts to determine whether to extend *Ameer* beyond its confines, but this Court has no warrant to do so.

But Plaintiffs' proposed duty here contains no such limit. Plaintiffs argue that Uber breached a duty because it "decid[ed] not to share information about . . . Wilson with Lyft." Doc. 55-2 at ¶ 236. That duty has no limit. Sure, Uber and Lyft both operate in the rideshare industry. *See id.* at ¶ 5. But, under Plaintiffs' theory, why would Uber's duty stop there? If it's foreseeable that "rideshare users who commit violence on one app will commit violence on the other app," *id.* at ¶ 190, then why would it not be just as foreseeable that Wilson would carjack and murder a taxicab driver? Or a limousine driver? Or a bus driver? Or a generous soul who decides to pick up a hitchhiker? Under Plaintiffs' theory, Uber would have had an obligation to share information about Wilson not just with Lyft, but essentially with anyone, anywhere who might come into contact with Wilson. In sum, "[t]he burden of imposing this ill-defined and undisputedly broad duty is simply too great in this context." *Nat'l Union*, 764 F.3d at 806.

Considering the allegations in Plaintiffs' proposed amended complaint, the relevant caselaw (including *Ameer*), and the legal theory upon which Plaintiffs rely, the Court remains unconvinced that the Supreme Court of Missouri would impose a duty on Uber to protect Newman from Wilson's attack. *See Nat'l Union*, 764 F.3d at 806. That means that Plaintiffs' proposed amended complaint could not survive a motion to dismiss. *See id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (holding that, to survive a motion to dismiss, a complaint must state allegations that "plausibly give rise to an entitlement to relief"). Thus, to allow Plaintiffs to amend their complaint would be to engage in a futile gesture. *See Plymouth Cnty.*, 774 F.3d at 1160. Because Plaintiffs have now had multiple chances to articulate a legal and factual basis

13

for imposing a duty on Uber, the Court denies Uber's Motion for Leave to Amend, doc. 54, with prejudice.

## IV.   Conclusion

For these reasons, the Court denies, with prejudice, Plaintiffs' [54] Motion for Leave to Amend.  A separate judgment accompanies this Memorandum and Order.

So ordered this 11th day of July 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE